I see my time is up. Thank you, Your Honor. Thank you, counsel. The case was well argued. We'll take it under advisement. We'll call our next case, United States v. Blake. Good morning, Your Honors, and may it please the Court, I am attorney Bruce Spector of the law firm Sanford Amarling & Associates. I would like to present the appellant, Mr. Zacharias Blake, in this appeal. We would like to reserve two minutes for rebuttal. That's granted. Mr. Blake is a federal prisoner who is being housed temporarily at the Virgin Islands Territorial Correctional Facility called Golden Grove on St. Croix. When the staff there found a cell phone and a charger in a pair of sneakers they believed belonged to Blake. He was then charged and convicted under federal law of knowingly possessing prohibited objects that threatened the order, discipline, and security of a prison. 18 U.S.C.A. 1791. Is he still in custody? Yes, he is in custody on other matters. Our argument today, really I just want to focus on two points. First, we'll deal with the detaining handbook, which the government went into great detail in this one-and-a-half-hour trial saying he received. They gave it to federal prisoners every time they came. It tells people what the rules are, etc. And the other is the lack of any admission of an agreement between the federal government and the territory about the responsibilities for prisoners. On the first issue, the government, again, it was their case. They relied on this detaining handbook. And the brief even admits time and time again that the rules Blake was on notice of were the rules in the Golden Grove detaining handbook. That handbook is crystal clear in stating that a cell phone possession does not bring with it a criminal prosecution. It lists all these offenses and it lists the sanctions for these offenses. Does it say that detainees are subject to all the laws and statutes of the United States? Yes, Your Honor. And I'm saying, however, that it goes into more detail than that. And the notice that it provides him is there are all these items specifically that happen here and will do two things. It's not a criminal prosecution. Let me press the point a little bit more. But if the handbook says you're subject to all the laws and statutes of the United States, and one of those laws and statutes is precisely what he was convicted under, why is that rule? Well, I think as we point out in some of – all of the cases in our brief, the larger question about the relationship between the federal government and these state or territorial institutions is the territorial institutions maintain primary responsibility over contraband, security, and all of that. The federal government is paying money, and they're saying, we want you to handle these folks for us. So the primary duty is there. And they are primarily responsible, again, for that aspect of it. And they're following through on that by saying, and here are the rules. He needs to be able to rely on something. And again, their witnesses come forward and they specifically say, we give it to the inmates so they know what is allowed and what is not and what is expected of them. But does the handbook say no contraband allowed and then defines contraband to include substance? Correct. And it then breaks down what happens to you with different types of contraband. And for some of them, you're going to get a criminal prosecution and punitive segregation. Specifically, it says just punitive segregation. Counselor, isn't the detainee handbook here a bit of a red herring? I mean, we're looking at a statute, a federal statute, that defines prohibited object and doesn't define prohibited object as something that is prohibited. It defines prohibitive object specifically, and the prohibition here was something that threatens the order, discipline, or security of a person or the life, health, or safety of an individual. So, I mean, the detainee handbook might tell us, you know, maybe this detainee handbook says that you're not allowed to have chewing gum, which might make some sense because people can do weird things with chewing gum. But by definition, under the federal statute, unless you can say that chewing gum threatens the order, discipline, or security, or the life, health, or safety of an individual, and that someone would readily know that that's included. I mean, isn't that your argument? In part, Your Honor, and I think I would extend that by saying the case is so distinguishable from other cases where prisoners are in federal institutions or where the rules where they are do define cell phones. For instance, the Third Circuit, and Your Honor, Randell, you sat on this case. Well, I was assuming for the sake that it is federal, that it fits under self-corporate. Go ahead, I'm sorry. I was just going to note, in Robinson v. Worden, in 2007, you all had a case about a cell phone in a federal prison. But that, clearly, there was notice there, and it was identified in the case. There was a specific memo, there was a notice, all the prisoners got it, and they knew in this federal institution that cell phones contraband were going to subject to 1791. Now, it is a basic fairness argument that Mr. Blake was in this facility, and he was told, here are the rules, here is the handbook, and here's what happens if you do this. And then the government changed the game up on him. The second major point is, in order to defend himself, and you'll recall in the record here, the judge rules there is a Rule 16 violation because the government never submitted the agreement here. In order to defend himself and know whether or not it is the local institution or it is a federal institution that has a charge of this or a charge of that, he was entitled to be able to see that agreement and then base his defense on that. The government did not produce it. Midway through the trial, they tried to discuss it and testify to it, and the judge rules they cannot, and rules that cannot come in. And, again, I think it really is, beyond all the cases, it's a simple, you can't have it both ways. But once that's disclosed, it's clear it's federal, isn't it? I'm sorry, Your Honor. I mean, isn't it clear that it is a federal correctional detention? I mean, there's no prejudice here because had he had it, he couldn't prove the statute didn't apply, could he? I still don't think I understand your question. Okay. The agreement, had he had the agreement, it would have shown for sure that the federal statute applied, correct? Well, Your Honor, we did get the agreement after the fact. And what the agreement says to me is really not anything about the federal statute applying. The agreement says you provide medical care for this prisoner. You are primarily responsible for security. That doesn't take away your prison argument? Et cetera. Having an actual agreement doesn't take away your prison argument? If there was an actual agreement, I'm saying at least he would have been able to defend himself and to perhaps say the federal responsibility started here and stopped here. The state started here and stopped here. And again, if we look at so many of the cases that were cited, the courts time and again say the local institution is the one that primarily still is responsible for contraband control and for all these security issues. Because the point is whether it fits under sub four of the federal statute. And the agreement demonstrates that it does. Isn't that correct? That there is an agreement and there would be a federal detention facility. I want to be cautious talking about the agreement because remembering it never came into evidence and it was never provided. There was some testimony about that though, wasn't there? Didn't the agent testify that there was an agreement? At one point, the first agent questioned about it, said there was an agreement and there was an objection. The judge overruled the objection. Later in the case, any time anybody tried to mention the agreement, the objection was sustained. And no testimony was allowed about the agreement or what was in it. And it was never offered into evidence. And again, it was never available. And the judge then specifically said we do have a rule 16 violation here and it purges the defendant. Aren't you applying the old definition of prison? I mean it was amended. A lot of your cases you cite, and you recognize and agree, were older ones. Wasn't it fixed to cover this situation? And I think this is part of the point. I completely agree with Your Honor that the statute was amended. And at that point, the government really has two options. It can say we are proceeding here under the part of the new statute that says pursuant to an agreement or a part of the statute that says pursuant to the direction of the Attorney General. By not choosing one before trial, Mr. Blake didn't know which to defend himself against and how to proceed. He had to guess. And that, again, is fundamentally unfair. And then at the trial, they say one thing, which is there's an agreement. In the brief, they now argue because the agreement didn't come into evidence that, oh, it's just under the direction of the Attorney General. It wasn't pursuant to an agreement. So, again, how does one defend oneself against this not knowing which standard to go under? Mr. Specker, can I go back to the first point that you were making? Sure, Your Honor. And to follow up on one of Judge Rendell's questions about the statute itself. Let me tell you what I have read about the use of cell phones. And I'd just like your take on it to see what you think. Cell phones are used to run gangs operating outside of prison, to put hits on people, to organize drug smuggling. And in one case, they can be taken apart and used as weapons. Doesn't that go to the safety and security issue that is built into the statute that he was convicted of? The charge itself has a court. I mean, wouldn't anybody pick a court or something? Yes, Your Honor. I don't take any issue with the notion that a cell phone should be contraband. This is a process question and a fairness question. And I would just add one more thing at this point if I could. Remember that the two primary witnesses say they have worked there for nine years and for 13 years respectfully. Every single prior case of a cell phone contraband has been handled as a punitive segregation. They had never seen one. Is that really your argument that he should not have been prosecuted criminally? He should have been prosecuted administratively? Absolutely. They were following that handbook, so shouldn't he follow that handbook? But doesn't – isn't that, again, a little bit beside the point? Isn't the real issue whether a reasonable person would have read the provision, object that threatens the order, discipline, or security of a prison for the life, health, or safety of an individual, and known and understood that that means that would include a cell phone and a charger? That, I believe, is a somewhat broader attack on Section 1791, your Honor, which I would support, but it's not a primary focus. Do you know of any federal prison or institution that allows inmates to have cell phones? I wouldn't venture a guess, Your Honor. See, I don't think so. So it just provokes me to think, well, maybe it's common knowledge that you're not supposed to have a cell phone. Again, what I would add is that the trial record doesn't go down that road and doesn't provide a basis for a conviction. That's a good fact. We have a very slim trial record, and the government should be held to what they produced in that trial record, which doesn't support this. In terms of the other cell phone, you talked about there were a certain number of other cell phones that were caught. Do you know if those prisoners were federal prisoners or they're held at the direction or under the agreement by the Attorney General? I don't believe that's any evidence, and I do not know. These may be purely state detainees. I do not know, except I think I would refer the court again to their witnesses' testimony, which they really stressed in the beginning that Mr. Blake got the detainee handbook. All local and federal prisoners got the handbook. They get it to let inmates know what is allowed and what is not. The prison relies on the handbook, and federal prisoners get it every time they come and go into the institution. Mr. Spector, with regard to the agreement and the prison issue, as I recall, there was an offer to present the actual agreement in the record, but the court objected to it. Is that correct? No. Defense counsel objected. You objected, and the court agreed with you. Yes. But then the court assumed that there was an agreement, and it's ruined. Well, is that accurate? Yes. The court then helped out, if you will, the prosecution. The court said, I know there's an agreement. Is that right? In two ways. By saying, you know, you can proceed by direction of the attorney general language. You didn't need to go to an agreement. But again, Mr. Blake is prejudiced because he's not prepared to defend himself one way or the other. The other thing the court did that was curious, and I think is clearly wrong based on the Gibson case, is the court said, well, we're a territory, so it doesn't matter. 1791 specifically says state or territory. And the same laws apply in states and territories about these agreements. And I do think his honor in the trial of the court went off a little bit on a tangent, again, trying to sort of excuse the lack of an agreement by saying, well, it's a territory and you don't have to have one. But again, 1791 and 4.012 and 4.013 all used state and territory language together and were just held to the same standard. Thank you. Did you maintain an equal protection or due process argument as to selective prosecution here? I mean your main challenge is void for vagueness, is it not? Yes. And I think the clearer sort of way to focus this is that the government should be held to the rules that they have applied before and that they told him apply. And part of the proof of that, that they should be held to that, that's the notice that he was under, is the testimony that both of these guards who've been there for so long know of no case where they didn't stray from that handbook that said for a cell phone you just get punitive segregation. All right. Thank you. Thank you, Your Honor. I would hear from you on that one. Good morning, Your Honors. Alan John Baptiste of the African United States government and the appellee. There are two issues in this case, judges. The first issue is whether or not the district court heard a ruling that 18 U.S.C. section 1791, which is possession of an awful item in or contraband in prison, is void for vagueness. An answer to that question, judges, no. The second issue is whether or not Golden Globe is a prison under the statute, and the answer to that question is yes. Dealing with the first issue. Could you be just generally speaking, Judge Rendell, I asked a question about equal protection, if I remember correctly. Yes, Your Honor. I mean, to me it seemed like there was a disparate treatment here. This is the only fellow, apparently the only fellow who had been charged criminally for a violation that over a long period of time had been dealt with administratively. So it seemed like he was picked out. Well, two issues. I'm sorry, Judge. Yeah, go ahead. I mean, it's just a general question. Yeah, two things, Judge. First of all, that issue was never presented in the lower courts or reserved as an argument in the lower courts, and it's not an issue at hand. Second, there was nothing on the record in the lower court during the trial that established that throughout the years that Golden Globe has been in existence, that not one prisoner that was found with a cell phone was prosecuted. In fact, when both officers were specifically asked that question, one of the officers said that he could not answer that question, and the other one said that as far as he's concerned, he can't remember. So there was never an affirmative answer to that question, Judge. So we also don't know whether in terms of being similarly situated, whether the other three were dealt with. That is correct, Judge. The record did not establish that. Is there anything in the record as to why cell phones were prohibited in the detainee handbook? That is, the reason for the prohibition, the underlying reason? Yes, Judge. There was some testimony that established that a cell phone charger, which is part of a cell phone, can be used to strangle inmates or other persons. It can be used to make phone calls outside, and based on that, it could be a danger to the health, welfare, and safety of an individual in the prison. And that's in the record? Yes, Judge. It is in the record. I believe that Officer James Davidson testified to that effect. All right. Thank you, everyone. Judge, as it relates to the first argument as to whether or not the statute is void of obeyance, the law is simple and clear enough for a reasonable person to understand that possession of a contraband, particularly a cell phone, is in fact a violation of the law. It does go further into defining what the sanctions are for a violation of that statute. But it doesn't notice that there can be criminal prosecution under a federal statute, does it? I'm sorry, Judge? It doesn't note in the detainee handbook that there can be prosecutions under a federal statute? Yes, Judge. If you look at the appellate's appendix, which is on page 20, it specifically says – well, first of all, it separates – it makes it clear that what happens administratively is separate and apart with what could potentially happen criminally. And it says that if you violate any of the regulations in the detainee handbook, it does not prevent you from being prosecuted federally, criminally, or even by a county ordinance. But the detainee handbook is very, very clear. I think it's on page 20. All right. Thank you. One of the arguments that counsel made earlier was that Mr. Blake was not placed on notice that when he – by him having possession of the cell phone that – first of all, I'm sorry, Judge. His argument was that Goldenberg was not in prison, and he said that the defendant was not placed on notice that it can be considered a prison if the act didn't deter – that there was no attorney general. Well, the record established that. In fact, that's one of the things that the judge based his decision on. And there was testimony to the fact that Marshall Bissey was, in fact, working for the Department of Justice, and that he had, on more than a dozen occasions, transported the defendant to and from Golden Grove. And he had to be acting in the direction of the attorney general because he was working for an attorney general. Given the fact that the defendant was prosecuted under that statute, that within itself gives him notice. Thank you. Judge, if there are any questions, at this point in time, the government rests, and I would ask you to affirm your judgment in the lower courts, finding that Golden Grove was, in fact, a prison, and directing it in the direction of the attorney general. Are there factors outside of the written agreement that would help us determine that there is, in fact, an agreement between federal authorities and the Virgin Island Territory that this institution is a prison? Yes, Judge. The very fact that you have a federal inmate being housed in a local prison establishes that there must be an agreement. Certainly, the local prison would not take someone into custody just for the benefit of doing it for themselves. They had to be acting in the direction of the attorney general, and there had to be some type of agreement. I understand counsel's argument where he says that the actual agreement was never admitted into evidence. However, there was actual testimony that the judge allowed him at the beginning of the trial that established that there was an agreement. So, looking at the totality of circumstances, I do believe that the government made its burden of establishing that the agreement did exist. There was a written agreement that was offered into evidence? Yes, Judge. There was a written agreement, but as counsel said, it was a Rule 16 motion, and the judge granted that motion. But prior to his granting of the motion, he had allowed evidence to come in that established that there was an agreement. There was testimony from federal officials that they are under direction or some instruction by federal authorities to bring federal prisoners to the Virgin Islands? Judge, no, there was not an exact testimony to that effect. However, the judge, which was a prior fact in this case, was able to draw an inference that the marshal was acting in the direction of the attorney general, because he testified that he had worked for the U.S. Marshal Service and that he had transported Mr. Blake to and from Golden Grove, at least on a dozen occasions. Thank you. Thank you, Your Honor. Thank you again, Your Honors. If I could just differ with opposing counsel on a couple of fact issues, and then I just want to talk about the Cheney Handbook and point out a couple of things. My reading of the record is that there was one sentence at one point, the first time, when one of the witnesses, in response to a question about whether there was an agreement, said yes. That is the sum quote of the testimony that was led about anything having to do with an agreement. What about the circumstantial evidence of being transported there all the time by folks who are obviously Justice Department officials? Again, I think the problem with that is the government needed to choose which way it was going to proceed. Is it going to say that by designation of the attorney general, this is a prison? And then Mr. Blake can prepare himself and the counsel can prepare themselves and try to proceed that way. The other, however, is if there is an agreement, those agreements are very specific about who is responsible for what. For instance, you have so many cases in brief where prisoners have tried to sue the federal government for an assault in the prison, bad medical care in the prison. The federal government wins those cases because they say, according to the agreement, this is the responsibility of the local institution. And all of those cases, I think, support our view here. And again, Mr. Blake would have been able to say, okay, now I know, and this is the responsibility of this, etc. But I really want to get to the detainee handbook. Page 13. First, there is the general. I think I would argue specific in law and notice always modifies the government in general. First, there's the general statement that Judge Weinberg was talking about. You're subject to the laws of the United States of America and the territory, etc. But then we get more specific, and it says there are three categories of offenses, etc., in the Bureau of Corrections, and there's a chart. And murder or attempted murder gets you criminal charges and punitive segregation. It goes on and on. There's a specific item on page 14, possession of cell phone, 90 months to 20 days punitive segregation. At the end of that section, there is this. In addition to the sanctions that are stated in the list of above, the following penalties may also be given for committing these offenses. Placement in a more secure housing unit, loss of one or more privilege for up to 60 days, confinement in a dormitory for up to 30 days. Where is something that would put Mr. Blake on notice that for this item, he is going to be subject to criminal prosecution? If we take the other side of it, that the general means I know I can be subject to criminal prosecution for everything. Then why do we give these specifics and why do we say for some people and for some people? There would be no meaning to it. But under the contraband division, 31, which is on page 19, it says items which are considered to be a detriment to the safety and orderly operation of the facility. And if you then have a federal statute that says that you can be prosecuted for having items that threaten the order and safety of a prison, that's it. The two of them combined put you on notice? Again, I would ask then what is the purpose of having the more specific provisions, for instance, on page 19 of contraband that say in this facility, cell phones and pages are contraband. And a few days earlier, what we're going to do to you for having a cell phone is X. It makes it notice that it doesn't put somebody on reasonable notice about what their behavior is and what the penalties would be. And going back to Connelly. Except look at trafficking in drugs and disorderly conduct. These are all administrative sanctions. They don't exclude prosecution, do they? Again, I think, Your Honor, we would at least need in those cases to have the defendants entitled to have a prosecution that comes forward and gives them discovery information, gives them a specific charge, gives specific testimony. For instance, we don't have testimony about the agreements. We don't have testimony about any of that. And then enable the person to be able to come to a full defense. Thank you. Thank you, Counsel. The case is well argued. We'll take it under advisement. And we would ask that the court reverse the conviction. Thank you.